IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7265

Summary Calendar
_____


SANDRA JUDITH "SANDY" SIMONS SOLOMON,

Plaintiff-Appellant,

v.

WALGREEN CO.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

( September 21, 1992 )

Before KING and WIENER, Circuit Judges.[*]

PER CURIAM:

The district court for the Northern District of Mississippi granted defendant Walgreen Co.'s motion for summary judgment against plaintiff Sandra Judith "Sandy" Simons Solomon (Solomon) in her action for the alleged breach of an employment contract. Finding that no genuine issue of material fact exists from which a jury could determine that Walgreens was in breach of contract with Solomon, we affirm.

_____

[0.] This matter is being decided by a quorum. See 28 U.S.C. § 46(d).

1

On August 26, 1985, Solomon applied for and accepted the job of liquor department manager at the Walgreens store located in Hoffman Estates, Illinois. In 1988 she learned of Walgreens' plans to open a store in Antioch, Illinois, and requested a transfer to Antioch, which she received. In May of 1989, Solomon changed stores again, and went to work at the Walgreens in Fox Lake, Illinois.

Sometime in February of 1990, Solomon approached Roy Grauer, her district manager, and informed him that she was in the process of obtaining a divorce and desired to move to Tupelo so she could be near her adult daughter. Upon learning that a Memphis Walgreens store had a liquor department but that the Tupelo location did not, Grauer asked Solomon if she would consider working in Memphis instead. Solomon refused, stating that Memphis was too far away from her daughter. Grauer then contacted Mike Earnest, manager of the Tupelo Walgreens, who informed Grauer that hours were currently available at the Tupelo store. Grauer initiated no further steps regarding the possibility of Solomon's employment in Tupelo. Solomon acknowledged that Tupelo was not within Grauer's district, and that he had no authority to move Solomon to the Tupelo store himself.

In March of 1990, Solomon again approached Grauer, requesting him to prepare a letter which she could give to the judge presiding over her divorce action to verify that she would be able to retain her health insurance on her minor children upon her move to

Mississippi.  As an accommodation to Solomon, Grauer prepared a letter addressed "To Whom It May Concern," stating that "Sandy Simons has been guaranteed 30 hours of employment at the Walgreen Drug Store located at 423 S. Gloster Street, Tupelo, Mississippi. This will enable Sandy to maintain her health insurance with Walgreen."  Earnest wrote a similar letter stating that "We will be able to guarantee the employee 35 to 40 hours so she can keep her major medical."

In mid-April, Solomon was in Tupelo for her daughter's wedding and dropped in unexpectedly at the Walgreens store.  She introduced herself to Earnest who told her to come and see him when she got down to Mississippi.  Solomon did not tell Earnest when she anticipated moving to Tupelo, and there was no discussion of any employment positions, hours, schedule, or rate of pay.  Upon ascertaining the date of her move, she made no effort to contact Earnest to inform him of her anticipated arrival date.  On June 28, 1990, Solomon requested three months personal leave to relocate to Mississippi.  On July 2, 1990, she presented herself at the Tupelo store for employment.  Solomon was not hired, as no job openings were available.

Sometime in March of the following year, Solomon filed a lawsuit against Walgreens alleging breach of contract of her "guaranteed job" in the Tupelo Mall Walgreens.  On June 1, 1991, Walgreens hired Solomon to work at the Tupelo location.  She continued to work at this location until August 31, 1991, when Walgreens closed its Tupelo store.

In April of 1992, the district court for the Northern District of Mississippi granted summary judgment in favor of Walgreens, holding that nothing in the record would lead a reasonable juror to believe that Walgreens breached an employment contract with Solomon.

                                   II.

On appeal we review a summary judgment de novo, applying the same standards as the district court. Waltman v. Int'l Paper Co., 875 F.2d 468, 474 (5th Cir. 1989). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the facts drawing all inferences in the light most favorable to the nonmoving party. Duvall v. The Ritz Carlton Hotel Co., 946 F.2d 418, 420 (5th Cir. 1991). If the record taken as a whole, however, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact to be resolved at trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The substantive law of the case identifies which facts are material for the purposes of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the case at bar, the substantive law of Mississippi controls. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court is Erie-bound to apply state law as it currently exists, and may not change that law

or adopt innovative theories of recovery. <u>Jackson v. Johns-Manville Sales Corp.</u>, 781 F.2d 394, 396-97 (5th Cir. 1986); <u>see also</u> <u>United Parcel Serv., Inc. v. Weben Indus., Inc.</u>, 794 F.2d 1005, 1008 (5th Cir. 1986).

III.

## A. The Mississippi Employment at Will Doctrine

Mississippi has long adhered to the common law rule that "where there is no employment contract (or where there is a contract which does not specify the term of the worker's employment), the relation[ship] may be terminated at will by either party." <u>Perry v. Sears, Roebuck, & Co.</u>, 508 So.2d 1086, 1088 (Miss. 1987). The employment at will doctrine was explained in <u>Kelly v. Mississippi Valley Gas Co.</u>, 397 So.2d 874, 874-75 (Miss. 1981), as follows:

> The employee can quit at will; the employer can terminate at will. This means that either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract.

<u>Id</u>. Mississippi has rigidly adhered to this rule since 1858. <u>See</u> <u>Butler v. Smith & Tharp</u>, 35 Miss. 457, 464 (1858).[1]

Acknowledging this doctrine to be controlling, Solomon nonetheless attempts to escape its application by arguing that she

---

[1] The only exception to this rule appears to be that in certain extremely limited circumstances, contractual obligations may arise through an employee handbook which expressly intends to modify the terms of employment at will. <u>Perry</u>, 508 So.2d at 1088. Other than this, the Mississippi Supreme Court has declined opportunity to carve out any exception to the common law rule. <u>Robinson v. Coastal Family Health Center, Inc.</u>, 756 F. Supp. 958, 961 (S.D. Miss. 1990); <u>see</u> <u>Perry</u>, 508 So.2d at 1089 (refusing to adopt a public policy exception to Mississippi's employment at will doctrine).

5

had a specific contract of employment with Walgreens evidenced by the letters from Grauer and Earnest, and the Walgreens employment manual and handbook. Despite Solomon's arguments, we find the facts clearly indicate that the relationship between herself and Walgreens was at will.

Solomon's original employment application from 1985, signed by Solomon herself, specifically states as follows:

> 3. I understand that my employment with Walgreen Co. is for no definite period and may be terminated at any time, with or without cause, and without any previous notice, at the option of either Walgreen Co. or me. I further understand that no employee, manager or other agent or representative of Walgreen Co., other than its Chief Executive Officer, has any authority to enter into any agreement for employment for any specified time, or to make any agreement or amendment contrary to the foregoing.

This clearly indicates that the relationship between the two parties was at will.[2]

Solomon argues that the letters supplied at her request by Grauer and Earnest modified her at-will status and gave her a specific contract of employment with Walgreens. Under Mississippi law, we fail to see how this can be so. As the facts state, the two Walgreens managers provided Solomon with letters stating that she would be guaranteed a specific number of hours. First of all, by the unambiguous terms of Solomon's signed employment application, Solomon had express notice that no manager, such as

---

[0.] In the brief she submitted to this court, Solomon states that the letters supplied by Grauer and Earnest would supersede the dictates of the employment application. She fails, however, to cite any authority for this proposition or explain why the letters would have this effect.

Grauer or Earnest, had the authority to modify her at-will status by employing her for a definite term. Second, while a specific number of hours is given, no definite length of term of employment--nor any other details of her allegedly "guaranteed" position--appear in either letter. Length of employment is a substantial term and must be included in a writing offered to show a contract of employment for a definite term in order for the statute of frauds to be satisfied. <u>Bowers Window & Door Co., Inc. v. Dearman</u>, 549 So.2d 1309, 1313 (Miss. 1989); <u>see</u> Miss. Code Ann. § 15-3-1(d) (1972).

Solomon tenuously attempts to argue that this critical missing element is supplied by Grauer's and Earnest's references to "30 hours" and "35 to 40 hours" of employment. We fail to see how this reference establishes a definite term of employment. In the brief she submitted to this court, Solomon contends that this statement of hours establishes a definite period of employment "[w]hether the term be one hour or one month," and that "[w]hether the plaintiff's employment were for one day or six months, the length of that employment is not relevant." The argument Solomon is attempting to advance is far from definite; she herself cannot devine a definite term of employment from the nebulous writings of Grauer and Earnest.[3] Employment of an agent for an indefinite time is terminable at will under Mississippi law. <u>Butler</u>, 35 Miss. at 464.

---

[3] We note that Solomon ultimately was employed at the Tupelo Walgreens from June 1, 1991 until the Tupelo store closed on August 31, 1991. This encompasses more than the 30-40 total hours of employment she asserts she was guaranteed.

Without a written confirmation of length of employment, Solomon remained an employee at will subject to dismissal for a good reason, a wrong reason, or no reason at all. See Robinson v. Coastal Family Health Center, Inc., 756 F. Supp. 958, 961 (S.D. Miss. 1990), citing Kelly, 397 So.2d at 874-75. We therefore conclude that the writings of Grauer and Earnest are much too indefinite to establish a definite term of employment and satisfy the statute of frauds.

Solomon additionally claims that Walgreens' personnel policy and orientation manuals provide any missing terms of her guaranteed contract of 30 to 40 hours of employment in Tupelo, thereby satisfying the statute of frauds and establishing the existence of an employment contract. Under Mississippi law, an employee handbook may, under certain conditions, become part of an agreement between an employer and employee. See Perry, 508 So.2d at 1088-89. Based on an examination of both Walgreens manuals, however, Solomon's assertion fails. The orientation manual, ?Welcome to Walgreens," expressly states in nonobligatory language that it is an aid to give the employee a better understanding of his or her job, and that "[t]he policies and statements in this booklet, and in any other booklets, manuals, or publications of Walgreens are not a contract of employment or a contract of continued employment." The personnel policy manual likewise contains no promises of tenure, nor any other terms that could possibly be construed as modifying an employee's at-will status. Solomon wholly fails to cite any specific portions of the manuals

8

supporting her claim. Under Mississippi law, nothing in these publications could be construed by a reasonable fact finder as modifying Solomon's at-will status, especially in the face of the express disclaimer contained in the orientation manual. See Perry, 508 So.2d at 1088-89.

In sum, nothing in the record would lead a reasonable juror to conclude under Mississippi law that Solomon possessed secured or guaranteed employment with Walgreens upon her arrival in Mississippi. Prior to her arrival in Tupelo, there had been no discussion or confirmation of a start date, salary, position, nor any other aspect of employment--terms which would normally be considered of great importance to anyone attempting to secure a job and relocate her family. Based on these facts, it was manifestly unrealistic of Solomon to assume that she had a guaranteed job upon her arrival in Mississippi. At best, she had an invitation to discuss the possibility of employment at the Tupelo Walgreens once she moved to Mississippi. Even if the Tupelo store did have a position available for her upon her arrival, it still would have been on an at-will basis. What may be perceived as corporate callousness towards a loyal worker is no basis for a legal cause of action. See Perry, 508 So.2d at 1087. As has been noted by the Supreme Court of Mississippi, "[t]he Golden Rule, unfortunately, is not a rule of law." Id. Viewing the the record in the light most favorable to Solomon, we fail to see how a rational trier of fact could find that an employment contract existed between the parties.

B. Equitable and Promissory Estoppel

9

Having decided that neither the manuals nor the letters give rise to the existence of an enforceable contract between the parties, we now consider whether an enforceable contract may be found on grounds of estoppel. Equitable estoppel is a well-established exception to the statute of frauds. PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss. 1984). A party asserting equitable estoppel must show (1) that she has changed her position in reliance upon the conduct of another; and (2) that she has suffered detriment caused by this change in position in reliance upon that conduct. Id. at 206. Promissory estoppel requires (1) a promise; (2) that induces action of a definite or substantial character on the part of the promisee; and (3) that the promisor reasonably should have expected the promisee's action. See Sanders v. Dantzler, 375 So.2d 774, 776-77 (Miss. 1979). If these elements are present, the promise is binding "if injustice can be avoided only by the enforcement of the promise." Id. at 776. Additionally, each of these doctrines requires reasonableness. See PMZ Oil, 449 So.2d at 206; Sanders, 375 So.2d at 776. The law, however, "does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." PMZ Oil, 449 So.2d at 206 (quoting McLearn v. Hill, 176 N.E. 617, 619 (Mass. 1931)).

In the case at bar, Solomon has wholly failed to set forth a genuine issue of material fact as to whether a promise was made by Walgreens. The record is devoid of evidence to support Solomon's allegation that Walgreens promised her guaranteed employment upon

10

her arrival in Mississippi. Therefore, we conclude that no reasonable trier of fact could find that Walgreens, through the letters of its district managers, somehow made a promise to Solomon expecting to induce action on her part to her detriment.[4]

Furthermore, even if Walgreens hypothetically promised Solomon a job, we are unable to find any evidence that she relied on such a hypothetical promise to her detriment. Solomon's decision to leave Illinois and move to Mississippi was admittedly motivated by her divorce rather than by the promise of a job with Walgreens. Even if Solomon's move had been induced by a promise of a job, the Mississippi Supreme Court has followed the case law of New York, which "has held consistently that a change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine." Bowers Window & Door Co. v. Dearman, 549 So.2d 1309, 1315 (1989) (quoting Cunnison v. Richardson Greenshields Securities, Inc., 107 A.D.2d 50, 53 (N.Y. App. Div. 1985)) (move from Toronto to New York equally consistent with employment at will). "The choice to forgo current employment because of rosy promises does not put the stigma of unconscionability upon the defendant . . . ." Id. (quoting Ginsberg v. Fairchild-Noble Corp., 81 A.D.2d 318, 321 (N.Y. App. Div. 1981)). Solomon, therefore, cannot, on the basis of her move to Mississippi, invoke the doctrine of promissory estoppel. See Cunnison, 107 A.D.2d at 53.

---

[0.] To the contrary, Solomon received express notice in her 1985 employment application that district managers do not have the authority to make such promises.

11

Other factors recited by Solomon also weigh against detrimental reliance: she knew that her rate of pay in Mississippi would be less than in Illinois; Walgreens never represented that it would assume Solomon's moving expenses; she alone made the initial decision to relocate to Mississippi for personal reasons following her divorce; at no time did Walgreens attempt to induce her to move based on any sort of promise.[5] In short, Walgreens had nothing to gain by Solomon's relocation to Mississippi.

In order to recover under a breach of contract claim on a theory of equitable estoppel, a plaintiff must demonstrate a changed position and detrimental reliance. PMZ Oil, 449 So.2d at 1315. We cannot conclude that Solomon changed her position in reliance on the alleged promise of employment to her detriment. The only detriment which Solomon may legitimately claim is the loss of a Walgreens job in Illinois based on the hope of a Walgreens job in her newly chosen residential locale. It is the majority rule, and the rule in Mississippi, that the "termination of existing employment," even in reliance on an oral contract of employment, is insufficient proof of detriment and a necessary incident of being in the labor market or workforce; "it is not such an injury as to estop a defendant from asserting the statute of frauds as a

_____

[5.] Solomon also attempts to argue that the letters by Grauer and Earnest, prepared at her request, guaranteed her a definite term of employment for 30 to 40 hours in the Tupelo store. This even further undermines her estoppel argument. We find it manifestly unreasonable to assert, and nearly impossible to believe, that a person would relocate her entire family to Mississippi based solely on the "promise" of a mere 30 to 40 hours of employment.

12

defense." <u>Bowers</u>, 549 So.2d at 1315. Based upon the current state of Mississippi law, Solomon, as an at-will employee, has failed to present any evidence of detriment sufficient to invoke the doctrine of estoppel. <u>Id</u>.

Accordingly, we find that Solomon has failed to raise any genuine issue of material fact regarding both the existence of a promise and her detrimental reliance.[6]

IV.

We AFFIRM the district court's granting of summary judgment in favor of Walgreen Co.

---

[6] Additionally, the letters relied upon by Solomon to establish the existence of some sort of nebulous promise were not prepared by Walgreens in order to induce her to relocate, but were prepared at her request to further her cause in a divorce proceeding. In light of this state of facts, which Solomon somehow views as "having no bearing on the issue [of estoppel]," justice certainly does not require the application of equitable nor promissory estoppel.