UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-60209
SUMMARY CALENDAR
_____

FRANK ADAMIK; RICHARD ANGLADA; CHRISTIAN BAEHR; RACHEL
BALDWIN; JAN BARTOS; CANDACE BERGIN; PAMELA BRUCE; CYNTHIA
BURGES; CYNTHIA BYRD; CRISTIN CLARK; JESSIE COMBS, JR.; JOSEPH
CURTIS; KURT DAU; MICHAEL DAVIS; PETE DONOVAN; DORIS FRAZIER;
DENISE FRICKE; ROBERT GARY; DARRELL GUILLORY; CINDY NEIDER;
ASHLEY MAXTED; CAMIELIA PHILLIPS; MATTHEW PHILLIPS; ROBERT PICOU;
BEATRICE PONSON; RICHARD ROACH; STRACIE STROM; MARY VAN HOOSE;
WILLIAM E. BALLARD; NATHANIEL BUSH; KAREN MOGELL; VICTORIA B.
NGUYEN; GARY VAN PELT; KORBKUL TERESA WINTERS,

Plaintiffs-Appellants,

V.

MIRAGE RESORTS, INCORPORATED; BEAU RIVAGE,

Defendants-Appellees.

On Appeal from the United States District Court for the
Southern District of Mississippi
The Honorable Dan M. Russell, Jr.
(1:99-CV-398-RG)

**October 31, 2001**

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

Defendant Beau Rivage owns and operates a hotel and casino in Biloxi, Mississippi. Beau Rivage is a wholly owned subsidiary of GNLV Corp. GNLV Corp. is not a party to this action but is a wholly owned subsidiary of Defendant Mirage Resorts, Inc. Plaintiffs are former employees of Beau Rivage.

Plaintiffs alleged that the termination of their employment breached an implied employment contract between themselves and Defendants. Defendants claimed that Plaintiffs were employed at-will and could be terminated at any time. Defendants filed a motion for summary judgment, which the district court granted.

Having reviewed the record and the briefs, we AFFIRM the district court's judgment granting Defendants' motion for summary judgment based on the memorandum opinion and order of the district court, which is attached hereto as Appendix A.

**(APPENDIX A)**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**SOUTHERN DIVISION**


| | | |
|---|---|---|
| **FRANK ADAMIK, et al.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **1:99CV398RG** |
| | § | |
| **MIRAGE RESORTS, INC., et al.** | § | **DEFENDANTS** |


**MEMORANDUM OPINION AND ORDER GRANTING**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


BEFORE THIS COURT is the Motion of the Defendants, Mirage Resorts, Inc. (hereinafter referred to as "Mirage"), and Beau Rivage Resorts, Inc. (hereinafter referred to as "Beau Rivage"), for Summary Judgment pursuant to FED. R. CIV. P. 56. Plaintiffs seek compensatory and punitive damages from the Defendants based upon their contention that the Defendants breached an implied contract of employment. According to the Defendants, the Plaintiffs were employed at-will, and their employment could be terminated at any time. After consideration of Defendants' Motion, Plaintiffs' Response, Defendants' Rebuttal, the pleadings,

affidavits, depositions, briefs and arguments of counsel and the relevant legal authority, it is the opinion of the Court that Defendants' Motion is well taken and should be granted.

## FACTS AND PROCEDURAL HISTORY

The Defendant "Beau Rivage owns and operates a hotel and casino in Biloxi, Mississippi." Defendants' Memorandum Brief in Support of Their Motion for Summary Judgment, p. 2. "The hotel and casino officially opened on March 15, 1999." Defendants' Brief, p. 2. In 1998, the Beau Rivage began accepting employment applications. The employment applications signed by all applicants contained a certification which stated as follows:

> I acknowledge and understand that, if employed by Beau Rivage, my employment is that of employment-at-will. My employment and all terms and conditions of that employment are for an indefinite duration and are at the absolute will and pleasure of Beau Rivage. If employed, I acknowledge and understand that the employee handbook and any other Beau Rivage or Beau Rivage-sponsored writings relating to the terms and conditions of my employment are unilateral policies, procedures, statements, explanations and instructions, and lack any mutuality whatever unless a written employment contract is executed by me and the President of Beau Rivage.
>
> I further acknowledge and understand that Beau Rivage has the unilateral right, at any time for any reason, to make changes in any such policies, instructions and procedures with or without notice. I further understand and acknowledge that Beau Rivage may take any action concerning my employment, including termination, with or without cause and with or without notice, at the sole and absolute discretion of the Beau Rivage. I further acknowledge and understand no person other than the President of Beau Rivage, whose agreement must be in writing, has any authority to enter into any agreement relating to my employment, to enter into any agreement for employment for a specific time or to make any agreement inconsistent with the foregoing.

Defendants' Memorandum, pp. 2-3, *quoting* Certification, attached as Exhibit 1, Attachment A-1, to Defendants' Motion for Summary Judgment. Each applicant, by executing the

application, acknowledged that he or she had read and understood the certification. Upon employment with Beau Rivage, each employee signed an acknowledgment form verifying receipt of an employee handbook. The employee handbook contains a section which states as follows:

> This Handbook and any subsequent revision or supplement is not, and should not be construed as an expressed or implied contract of employment. You are an employee-at-will. As such, you have the right to terminate your employment relationship with Beau Rivage at any time for any reason, with or without cause, and Beau Rivage reserves the right to do the same. This Handbook is meant only to provide general policy statements and is not intended to provide you with any promise or guarantee of any benefits that Beau Rivage may offer or procedures that Beau Rivage may utilize during your employment. Further, your employment-at-will relationship is not altered by any of the terms of this Handbook. No one employed by Beau Rivage or its subsidiaries is authorized to make an exception to this understanding, except the President of Beau Rivage, whose approval must be in writing.

Defendants' Memorandum, pp. 3-4, *quoting* Employee Handbook, p. 3, attached as Exhibit 1, Attachment A-2, to Defendants' Motion for Summary Judgment.

According to the Plaintiffs, they "began the application and interview process" at Beau Rivage in late summer, early fall of 1998. Plaintiffs' Memorandum, p. 2. "Because of the tight labor market on the Mississippi Gulf Coast, high quality employees were at a premium." Plaintiffs' Memorandum, p. 2. "To off set this fact, Doug Pool," President of Beau Rivage, "gave Rick Gianti, the Poker Room manager, the authority to promise prospective employees immediate benefits, job security, choice scheduling and other fringe benefits." Plaintiffs' Memorandum, p. 2. Prior to applying for positions with Beau Rivage, all but two of the Plaintiffs were employed by other casinos. Because poker rooms at other casinos in the area had closed, the Plaintiffs questioned Gianti about the viability of the Beau

Rivage Poker Room. The Plaintiffs were concerned about leaving secure employment with benefits for a new position at the Beau Rivage. "In response to these concerns Mr. Gianti gave <u>specific assurances</u> to the Plaintiffs' (sic) that Mirage Resorts 'fully backed the Poker Room and that they were in it for the long haul.'" Plaintiffs' Memorandum, p. 3 (emphasis in original).

As noted above, because of a tight labor market in the area, Beau Rivage was experiencing difficulty in hiring a sufficient number of employees prior to opening the casino. "In response to intense pressures to have enough employees in place by opening day, Doug Pool authorized Rick Gianti in the presence of Plaintiff, Camielia Phillips" (sic), to do whatever it took to get the requisite number of Poker Room dealers in place." Plaintiffs' Memorandum, p. 5. Mr. Pool told Mr. Gianti "'to get some of those Grand [Casino] employees, and if you ha[ve] to pay them a bonus after three months or something, then so be it.'" Plaintiffs' Memorandum, p. 5, *quoting* Deposition of Douglas Pool, p. 37, attached as Exhibit 6 to Plaintiffs' Opposition. Two of the Poker Room employees hired by the Beau Rivage were allowed to encourage Grand Casino poker dealers to leave their employment with the Grand Casino for employment at the Beau Rivage. By early March 1999, the Beau Rivage Poker Room had employed the requisite number of employees.

Prior to the opening of the casino, Doug Pool and Barry Shier, Chief Executive Officer of Beau Rivage, conducted several orientation meetings for the employees. At one of the meetings, Pool "thanked the employees for their hard work and long hours" and reassured the employees "that there would be 'no layoffs' and that the casino had purposely under hired so as to assure no layoffs." Plaintiffs' Memorandum, p. 6.

The casino opened on March 15, 1999. Soon thereafter, the casino suffered "operational problems." Defendants' Memorandum, p. 4. On May 26, 1999, Doug Pool resigned, and Barry Shier assumed the responsibilities of President of the casino. In a meeting on or about July 14, 1999, Shier informed Gianti that he had decided to close the poker room. At a subsequent meeting, they agreed that the poker room employees would be informed at a meeting a week or so later. On July 27, 1999, Shier informed the poker room employees that the poker room was closing, effective immediately. He also informed them that a job listing of the available jobs at the casino would be made available to them, along with an interview sign-up sheet. There were 52 positions available at the casino. There were 63 poker room employees. According to Beau Rivage Employment Supervisor Tom Fudge, "[t]he final disposition of all 63 Poker Room employees as of September 27, 1999, was as follows:

> a. Eight employees transferred to other non-gaming jobs in the hotel or casino;
>
> b. Three employees were hired at other Mirage Resorts properties;
>
> c. Twenty-two employees became blackjack dealers; and
>
> d. Thirty employees departed the company.

Affidavit of Tom Fudge, p. 4, attached as Exhibit 1 to Defendants' Motion for Summary Judgment.

The complaint in this cause "was filed on September 16, 1999 by twenty-eight (28) former Beau Rivage employees ('Plaintiffs'), whose positions in the Poker Room were eliminated . . . when the Poker Room was closed." Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgement, p. 1. Since the filing of the complaint,

"three (3) Plaintiffs have dismissed their claims and six (6) Plaintiff have joined the suit for a total of thirty-one (31) Plaintiffs." Plaintiffs' Memorandum, p. 1. According to the Plaintiffs, the Defendants breached an implied contract of employment with them when the Defendants closed the Poker Room. The Defendants contend, however, that no implied contract of employment existed, and instead the Plaintiffs were at-will employees.

## DISCUSSION

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56 (e). Thus, when a motion for summary judgment is filed and is

accompanied by competent supporting evidence, a court may grant the motion if the opposing party fails to present controverting evidence. FED. R. CIV. P. 56 (e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

If the movant meets his burden by proving the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, the nonmovant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); FED. R. CIV. P. 56(e). If the nonmovant fails to present evidence showing that a genuine issue of material fact exists, then "the motion for summary judgment must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**BREACH OF IMPLIED CONTRACT OF EMPLOYMENT:**

The Plaintiffs contend that Gianti, on behalf of Beau Rivage, aggressively recruited them, and assured them that the casino was "100% behind Poker." Plaintiffs' Memorandum

in Opposition, p. 16. As noted above, Gianti was authorized to offer bonuses, "or whatever it takes," to hire the requisite number of employees prior to opening day. According to the Plaintiffs, "[t]he nature and quality of the statements made by Mr. Gianti were so numerous and so specific as to create an implied contract of employment." Plaintiffs' Memorandum in Opposition, p. 16. The Plaintiffs claim that their implied contract of employment was breached when the Beau Rivage closed the Poker Room. In support of their position, the Plaintiffs offer oral representations made by Rick Gianti and Doug Pool of secure employment with no layoffs. According to the Plaintiffs, these oral representations formed implied contracts of employment between the Plaintiffs and Beau Rivage. The Plaintiffs also claim that the express statements regarding at-will employment in the application and handbook were not conspicuous and thus did not negate the oral representations by Gianti and Pool.

The Defendants claim that no such contract was created. According to the Defendants, each prospective employee signed a certification prior to interviewing for employment that his or her employment "would be at-will, for an indefinite period of time, and that termination without cause or notice could be effected in the sole discretion of Beau Rivage." Defendants' Memorandum, p. 14. In addition, each prospective employee acknowledged in writing that he or she understood that "only the President of Beau Rivage had authority to make a contract of employment with Beau Rivage, which contract had to be in writing." Defendants' Memorandum, p. 14. Moreover, upon employment with Beau Rivage, each employee received an Employee Handbook which provided "(a) that all employees were employed at-will; (2) that they were subject to discharge for any reason with

-10-

or without cause; and (3) that the at-will nature of their employment relationship could not be altered without the written approval of the President of Beau Rivage." Defendants' Memorandum, p. 15. The Defendants further contend that no oral representations regarding secure employment were made. Even assuming representations were made regarding employment, the "express, written at-will disclaimers" in the application and in the handbook negated any implied contract of employment.

It is well settled in Mississippi that when no employment contract exists between the employer and employee, then the employment is at-will and as such may be terminated at the will of either party, for a good reason, a wrong reason, or no reason at all. *Solomon v. Walgreen Co.*, 975 F. 2d 1086, 1089 (5th Cir. 1992), *citing Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987) & *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874, 874-75 (Miss. 1981). "Mississippi has rigidly adhered to this rule since 1858." *Solomon v. Walgreen Co.*, 975 F. 2d at 1089 (citations omitted). In addition, an express, written statement that employment is at-will will defeat a claim that an implied contract of employment existed. *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1089-90 (Miss. 1987).

The employment application signed by all of the Plaintiffs explicitly stated that employment "would be at-will, for an indefinite period of time, and that termination without cause or notice could be effected," and that only the President of the casino could enter into a contract of employment, and such contract had to be in writing. Defendants' Memorandum, p. 14. In addition, each of the Plaintiffs received an employee handbook which reiterated that they were all employed at-will, and "were subject to discharge for any reason with or without cause," and that only the President of the casino could alter the at-will nature of the

-11-

employment by written approval. Defendants' Memorandum, p. 15. The application and handbook clearly and expressly stated that employment was at-will. Moreover, the application and handbook clearly and expressly stated that only the President of the casino could enter into an employment contract, and even then, such contract had to be in writing. As noted by the Mississippi Supreme Court, to hold that "a valid, express agreement and a contradictory implied agreement can exist concerning the same subject matter at the same time" is "ludicrous." *Perry*, 508 So.2d at 1088. The Court is not aware of any case applying Mississippi law which conditions effectiveness of an at-will disclaimer upon conspicuousness. Having reviewed the evidence in this case, the undersigned is of the opinion that no implied contract of employment existed between the Plaintiffs and the Defendants. For this reason, the Court is of the opinion that Defendants' Motion for Summary Judgment should be granted with regard to Plaintiffs' claims of breach of implied contract.

**ESTOPPEL CLAIMS:**

The Plaintiffs also claim that they had an enforceable implied contract of employment based upon equitable and promissory estoppel. The Plaintiffs contend that they relied upon the representations made by Gianti and Pool regarding secure employment with no layoffs to their detriment. To enable them to work at the Beau Rivage, the Plaintiffs left secure employment with benefits and seniority for employment at the Beau Rivage Poker Room, which ultimately, according to the Plaintiffs, proved not to be secure when the Poker Room was closed on July 26, 1999. The Plaintiffs claim that their implied contract of employment was breached when the Beau Rivage closed the Poker Room.

-12-

The Defendants counter that any reliance upon alleged statements and representations by Gianti and Pool would have been unreasonable in light of the specific, express language in the application and handbook to the effect that employment would be at-will and that only the President of the casino could enter into a contract of employment, such contract to be in writing. The Defendants also contend that with regard to the detriment suffered by the Plaintiffs, "[t]he Mississippi Supreme Court has consistently refused to recognize relinquishment of prior employment as sufficient detriment to invoke an estoppel theory in the at-will employment context." Defendants' Memorandum, pp. 17-18, *citing Bowers Window & Door Co. v. Dearman*, 549 So.2d 1309, 1315 (Miss. 1989);. Moreover, the Defendants note that "[t]he Fifth Circuit has reached the same conclusion even in a situation where the claimant relinquished prior employment and relocated over a long distance to accept a job." Defendants' Memorandum, p. 18, *citing Soloman v. Walgreen Co.*, 975 F.2d 1086, 1091-92 (5th Cir. 1992). In further support of their position, the Defendants cite *Dubard v. Biloxi H.M.A., Inc. d/b/a Biloxi Regional Medical Center*, 2000 WL 769625 (Miss. 2000), a recent case in which the Supreme Court of Mississippi "reaffirmed its holding in *Dearman* and cited with approval the Fifth Circuit's holding in *Soloman*." Defendants' Memorandum, p. 18. For this reason, according to the Defendants, even if the Plaintiffs could show reasonable reliance, they are unable to show legal detriment, which is necessary "to sustain their estoppel theory." Defendants' Memorandum, p. 19.

"A party asserting equitable estoppel must show (1) belief and reliance on some representation; (2) change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *Cothern v. Vickers, Inc.*, 759 So.2d 1241, 1249 (Miss. 2000), *citing*

-13-

*Covington County v. Page*, 456 So.2d 739, 741 (Miss.1984); *PMZ Oil Co. v. Lucroy*, 449 So.2d

201, 206 (Miss.1984); *Resolute Ins. Co. v. State*, 290 So.2d 599, 602 (Miss.1974). "Promissory

estoppel requires (1) a promise; (2) that induces action of a definite or substantial character on the

part of the promisee; and (3) that the promisor reasonably should have expected the promisee's

action." *Solomon v. Walgreen Co.*, 975 F.2d 1086, 1091 (5th Cir. 1992), *citing Sanders v.*

*Dantzler*, 375 So.2d 774, 776-77 (Miss. 1979). Promissory estoppel, like equitable estoppel, also

"requires proof of detrimental reliance." *Southern Mortgage Co. v. O'dom*, 699 F. Supp. 1227,

1230 (S.D. Miss. 1988), *citing PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss. 1984).

The Mississippi Supreme Court has held the following regarding the required element of

detriment or prejudice caused by the change of position necessary for an estoppel claim:

> "Courts have generally found that the mere detriment furnished by an employee in leaving
> one position and taking another does not constitute sufficient consideration []" to alter an
> employment-at-will contract. Tracy A. Bateman, Annotation, Employer's State-Law
> Liability for Withdrawing, or Substantially Altering, Job Offer for Indefinite Period Before
> Employee Actually Commences Employment, 1 A.L.R. 5th 401, 408 (1992) (footnote
> omitted). This court has acknowledged the majority rule that "the termination of existing
> employment in reliance on an oral contract of employment, even for better pay, is only a
> necessary incident of being in the labor market. . . ." *Bowers Window & Door Co. v.*
> *Dearman*, 549 So.2d 1309, 1315 (Miss. 1989). The Fifth Circuit has also applied this rule
> where a prospective employee relocated in reliance on a purported offer of employment.
> *Solomon v. Walgreen Co.,* 975 F.2d 1086, 1091-92 (5th Cir. 1992). Dubard's termination
> of his employment in Grenada and his relocation to Biloxi were insufficient to show that
> he relied on the employment offer to his detriment.

*Dubard v. Biloxi H.M.A., Inc.*, 2000 WL 769625, at *1 (Miss. June 15, 2000). This Court agrees

with the Defendants, and finds that the termination of prior employment by the Plaintiffs for a

position at the Beau Rivage, even coupled with the loss of benefits, security, and seniority with

the prior employment, is insufficient detriment necessary to satisfy the requirements of equitable

and promissory estoppel. Therefore, assuming that the Plaintiffs could establish the remaining

-14-

requisite elements, the Plaintiffs are unable to establish the element of detriment caused by a change in position.  Because the Court finds that the Plaintiffs are unable to establish the detriment element, the Court need not address the remaining elements.  For this reason, the Court is of the opinion that no genuine issues of fact remain on the claims of equitable and promissory estoppel to enforce an implied contract of employment.  The Defendants are therefore entitled to judgment as a matter of law.

## **CONCLUSION**

Defendants have demonstrated that there exists no genuine issue of material fact with regard to the claims of breach of implied contract of employment, and enforcement of an implied contract of employment based upon equitable and promissory estoppel.  Accordingly, the Defendants are entitled to Judgment as a Matter of Law.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that the Motion of Defendant Beau Rivage and Defendant Mirage for Summary Judgment pursuant to FED. R. CIV. P. 56(c), should be, and is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED,**  this the _____ of January, 2001.


_____
DAN M. RUSSELL, JR.
U. S. DISTRICT JUDGE