DYLE *v.* GRIFFIN.

[85 South. 93, In Banc. No. 21201.]

PRINCIPAL AND AGENT.          *Master held liable for employment contract made by agent.*

Where the master has held out his agent as having the authority to make a contract of employment with a servant, fixing the time, hours, and manner of work, the master is liable for a contract so made by his agent.

APPEAL from the circuit court of Jones county.

HON. R. S. HALL, Judge.

Action by F. S. Dyle against J. M. Griffin for wages. From a judgment for plaintiff for part of the relief sought, he appeals. Reversed and remanded.

*E. C. Fishel* and *J. M. Arnold,* for appellant.

As we see it there is but one question in this record, and if this question is answered affirmatively then the judgment below was error; if otherwise, then it is correct so far as the giving of the peremptory instruction is concerned. That question is this: Was Spafford the agent of 'Griffin, or had Griffin by his acts and conduct, or by his negligence acted so as to lead or mislead the appellant into believing that Spafford had the authority to act for Griffin?

If Griffin understood in his own mind, and he does not testify that he made the slightest investigation to ascertain what Spafford's duties were with the Hemphill Lumber Company but simply satisfies himself with, as he says "understanding" that this man's duties were something they were not and acting upon this understanding he told Dyle that Spafford would stay on in the same position and that there would be no changes and Dyle acted on this assurance, then Griffin is liable whether Spafford has the authority or not. The undisputed testimony is this record discloses that not only Dyle, but Freeman and other men had been working for the Hemphill Lumber Company, for two years and the testimony is also undisputed that the duties of Spafford were to employ and discharge men, fix their wages and working conditions, and these same men had been employed by Spafford and had worked under him for two years. Now Mr. Griffin comes along and buys the plant and with unlimited opportunities to find out exactly what each man was doing, his duties and wages and authority, does not do

this but simply goes to the men and tells them there will be no change and that Spafford will stay on in his same position with the same duties. If this does not bind Mr. Griffin, even though Spafford may have actually exceeded the authority Griffin thought he had, we cannot conceive of a stronger case of estoppel as against Griffin, because if one of two parties must suffer then that party who is negligent must suffer. Dyle in this matter lost his job for exactly the thing that he took up at the start and he then refused to work ten and one-half hours for ten hours' pay, and he and Mr. Spafford had an agreement about this very matter, and yet we find that Mr. Griffin caused Dyle to be fired because Dyle refused to work ten and one-half hours for the same pay. Of course, the giving of the peremptory instruction in this case was error in any way it may be looked at. There was at least a question of fact for the jury to pass on. Whatever else may be said here Mr. Griffin is most certainly estopped to deny that Spafford was his agent. It may be true that he may have "understood" that Spagord was merely a saw-mill foreman, but he does not explain that he made any investigation to ascertain this, but it was his duty before he undertook to deal with third parties to ascertain this fact clearly. If Dyle was not entitled to rely on Griffin's statement that there would be no change and that Spafford would stay on in his same position and with the same authority, then how could a case arise when a man would be entitled to do this? Griffin was the owner; he had it in his power to clearly define the authority of each employee but instead of this he simply contents himself with a statement to Dyle and the other men that he wanted every one to stay on and that there would be no change and that Spafford would stay on in his same position. Dyle was entitled to believe and did believe, that Spafford had the same authority he had had always; he had hired Dyle and made the contract for the work hours and pay with him and this had gone on two years,

and in reliance on the statement of 'Griffin that Spafford would stay in his same position, Dyle was authorized to accept the contract that Spafford offered and to take up working conditions with him and rely on his contract with Griffin made though Spafford. Then if Griffin did not have a contract with Dyle made through Spafford he had none at all, for he permitted Dyle to work on and did not attempt to interfere with him until Dyle declined to work over ten hours per day and because Dyle would not do this for ten hours" pay. "The doctrine of estoppel involves apparent agency which exists where the principal intentionally, or by want of ordinary care, induces a third person to believe another is his agent; although he did not in fact employ him," 31 Cyc., page 1235 (11) and cases cited thereunder. Also (B) Ib. 1237 and cases there cited. "The old equity rule that where two parties are at fault, and one must lose, the one most at fault, should suffer the loss is applicable." *Morgan* v. *Neal,* 7 Idaho, 629, 97 Am. St. Rep. 264. (Quotation from page 266): *Quinn* v. *Dresbach,* 75 Cal. 159; 7 Am. St. Rep. 138. "The powers of agents of insurance companies are governed by the general law of agency, and as such an agent possesses such powers only as have been conferred by his principal, or such as third persons have a right to assume, he possesses under the circumstances of the case." *Germania Life Ins. Co.* v. *Bouldin,* 100 Miss. 660, 56 So. 609 (4). We could cite many more cases to the same effect and argue at great length the different phase of agency and the scope and apparent scope of any agent's authority but there can be no serious difference about what the law is. To sum this case up, with regard to the facts as disclosed by the evidence taken and offered, we have here a man, Griffin who bought a saw mill; this mill had been operated for over two years by another who had a well-organized crew of hands, with foreman, superintendent and others whose duties were

well defined. Griffin buys this concern. He goes to the employees of this concern and desires all of them to remain with him and to be as faithful to him as they had been to their former employer and he advised this particluar appellant there will be no changes and that especially one Spafford will stay on in his same place and with the same duties that he had had. Dyle knew what those duties of Spafford were. Griffin, in the light of after developed circumstances, seems not to have known exactly what Spafford's duties were. He, Griffin, even told Spafford that he would remain and his duties would be the same as before, and this was an assurance to Spafford that he had authority to hire any discharge men because he, Spafford, knew what his authority was before. Again Mr. Griffin fixes beyond escape his liability here by his answer on page 6 of the stenographer's notes - to this question. Q. Spafford did not have authority to hire any one? A. He had authority to hire any one pertaining to the planing mill but not to the saw mill.'' Now the court will bear in mind that this appellant was in the planing mill and not the saw mill. Spafford exercised this authority that Griffin says he had and made a contract pertaining to the planing mill and made it with Dyle and then tries to repudiate this contract and the agency of Spafford when by his own answer he says Spafford had this identical authority.

We submit that under the facts in this case the giving of the peremptory instruction was wrong and the appellant was entitled to go to the jury that if the facts show and offered to be shown by him are not disputed, then he would be entitled to a peremptory instruction to have verdict and judgment for the full amount sued for.

*W. J. Pack,* for appellee.

Appellant contends in his brief that appellee should be estopped from denying the agency of Spafford to make

a contract with Dyle. We respectfully submit that in our opinion this case does not turn upon the question of agency, but that independent of every other fact or circumstance there was never a completed contract between appellant and appellee that would warrant appellant in bringing a suit for any certain amount of money or for any definite length of time. No contention is made that Griffin and Dyle ever contracted and agreed between themselves that Dyle should be employed for one month's work at one hundred and twenty-five dollars a month and that he should begin work at six-thirty (6:30) o'clock in the morning.

Unless there was a completed agreement between appellee and appellant as to the salary per month what appellant was to get when he should begin the day's work, and how long the salary was to continue, there could be no recovery except for *quantum meruit,* and this amount was tendered at the trial, and the judgment recorded shows that appellant recovered this amount. The proposition is elementary and needs no citation of authority that before one party to a contract can recover for a breach, he must show the existence of a contract and that there was a complete meeting of the minds upon every term and condition of the contract. This the appellant wholly failed to do. The most that he could recover was for the ten days actually put in, and under the testimony in this record could have recovered only what the proof might show was reasonable compensation for his services, for this time, because there was no proof in the record that Griffin promised or agreed to pay any certain sum per month to appellant.

Sykes, J., delivered the opinion of the court.

The appellant, F. S. Dyle, filed suit in the justice court against appellee, Griffin, for the sum of one hundred and twenty-five dollars, one month's wages claim-

ed to be due him, by appellant. At the conclusion of the testimony in the circuit court a motion to exclude it was sustained, and judgment rendered for the plaintiff for ten days' work at the rate of one hundred and twenty-five dollars a month, from which judgment this appeal is prosecuted.

The questions presented by this record are: (1) Whether or not the appellant was employed to work for the appellee for the month of December for a salary of one hundred and twenty-five dollars, a day's work being ten hours; (2) whether or not the appellee, Griffin, had expressly authorized or held out to appellant as his agent to make this contract with appellant a man by the name of Spafford. The material testimony in the case is as follows:

The appellant testified that some days prior to December 1, 1917, the appellee, Griffin, purchased a sawmill at which appellant had been working for about two years as planing mill foreman; that prior to this purchase one Spafford had been superintendent of the mill, with authority to make contracts of employment and fix the salary and hours of work of the employees of the mill; that a few days before appellee took charge of the mill he told all of the employees that he would take charge on the 1st of December, and wanted them to continue in their present employment and be loyal to him; that Mr. Spafford would continue in his employment in the same capacity that he had been in the employ of the previous owner; that Mr. Spafford made a new contract with the appellant to continue in his present employment at a salary of one hundred and twenty-five dollars a month, working ten hours a day. Mr. Spafford testified to the same facts as the appellant. The appellee denied most of the material facts above enumerated. After working ten days in December, the appellant was discharged because he would not work ten and one-half

hours a day, instead of ten hours as he claimed his contract provided for.

The case should have been submitted to the jury. Under the testimony of appellant the master either made Stafford superintendent of the mill with authority to make these contracts, or he held him out to these employees as having that authority. In either event the master would be responsible for contracts made by Spafford. The testimony of the appellant also was to the effect that he had made a contract with Spafford for a month's work of ten hours a day at a salary of one hundred and twenty-five dollars a month. These questions were both controverted questions of fact, to be submitted to the jury.

*Reversed and remanded.*