549 So.2d 1309 (1989)
BOWERS WINDOW AND DOOR COMPANY, INC., William B. Bowers, as Agent for Bowers Window and Door Company, Inc., and William B. Bowers, Individually
v.
Rick R. DEARMAN.
No. 58611.
Supreme Court of Mississippi.
September 13, 1989.
*1310 Earl Keyes, Keyes Moss Piazza & Woods, Jackson, for appellant.
Marvin E. Wiggins, Jr., Martin & Jones, Meridian, for appellee.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Complaint was filed by Rick Dearman on or about February 8, 1987, in the Chancery Court of Lauderdale County against William B. Bowers and Bowers Window and Door Company (hereinafter "Bowers"). Dearman sought specific performance of an oral contract of employment, or alternatively, damages for breach of that contract. The cause came on for trial in the Chancery Court of Lauderdale County on May 28, 1987, before the Hon. George Warner, Jr.
At the conclusion of Dearman's case, both sides rested. The Chancellor held in favor of Dearman and awarded damages against Bowers Window and Door Company in the amount of $2,000.00 per month from June 1, 1987, through December 15, 1988. In addition, Dearman was awarded a lump sum payment of $12,280.00 representing past due salary. The lower court also ordered that Dearman would be obligated to abide by the terms of the contract in the event Bowers elected to re-hire him, and that his expenses would be reimbursed according to the terms of the contract. Finally, William Bowers was dismissed from the suit individually.
Bowers promptly filed notice of appeal and raises the following issues:
I. THE LOWER COURT ERRED IN DETERMINING THAT THE ORAL EMPLOYMENT CONTRACT OF SEPTEMBER 3, 1986, WAS TO EXTEND THROUGH DECEMBER, 1988.
II. THE LOWER COURT ERRED IN APPLYING THE DOCTRINE OF EQUITABLE ESTOPPEL AS AN EXCEPTION TO THE BAR OF THE STATUTE OF FRAUDS.
Since 1978, Rick Dearman had been employed as a salesman for McGinnis Distributing Company in Meridian, Mississippi. Dearman was for the most part happy with his situation at McGinnis, but he desired more. Apparently feeling that McGinnis could not offer the kind of advancement he desired, Dearman embarked on a job search in mid-1986.
Dearman's venture into the job market caused him to send a resume to William Bowers, president of Bowers Window and Door Company, then headquartered in Ridgeland, Mississippi. In his resume, Dearman included the usual facts and stated that the only employment move he would consider would be for an advancement over his present position. To put this consideration into perspective, Dearman was being paid a guaranteed salary of $300.00 per month plus commissions by McGinnis. In the year 1984, Dearman earned $41,000.00, in the year 1985 he earned $22,875.63, and through mid-September, 1986, he earned $20,844.00.
At the time Bowers received Dearman's resume there were no immediate openings. However, Bowers lost a sales representative from the Jackson area in August, 1986, prompting William Bowers to contact Dearman. Bowers queried Dearman about the recent opening in the Jackson area, but Dearman declined an offer to interview because he had recently married, and he had just completed construction of a new home in Meridian. Dearman did, however, proposition Bowers about expanding into the Meridian area, but no accord was reached. From this point forward, details of the budding relationship begin to differ.
*1311 It is Bowers's story that he heard nothing from Dearman after he declined to interview for the Jackson opening until Dearman showed up uninvited at the Ridgeland office on September 3, 1986. By this time the Jackson position had been filled, but Dearman was there to talk about a position in Meridian. William Bowers and Dearman met for approximately one hour and fifteen minutes, during which Dearman related his working knowledge and experience in the Meridian area, and allegedly told Bowers that he could generate $40,000.00 to $50,000.00 in sales per month in that area.
Dearman, on the other hand, asserts that following his refusal of the Jackson position, William Bowers called him to say that he was considering expansion into the Meridian area, and that he wanted to talk with Dearman because of Dearman's experience in the Meridian area.
Regardless of how the meeting came about, the parties uniformly agree that during this meeting on September 3, 1986, William Bowers extended on behalf of the company an oral offer of employment to Dearman, which Dearman accepted. The agreement provided that Dearman would work for Bowers as a sales representative in the Meridian area. Dearman thereafter began work for Bowers on September 15, 1986.
It is likewise uncontradicted that one condition of Dearman's employment with Bowers was that he terminate his employment relationship with McGinnis, and this he did. However, before terminating his relationship with McGinnis, Dearman desired written confirmation of the Bowers offer. On September 5, 1986, a letter from Bowers was sent to Dearman and read as follows:
This letter will confirm our conversation on Wednesday, September 3, 1986, wherein I offered you a sales position with our company. As stated, I will guaranteed you a base income of $24,000.[sic] yearly and an expense allowance of $400.00 per month.
Sincerely,
BOWERS WINDOW & DOOR CO., INC.
/s/ William B. Bowers
Dearman, William Bowers, and Sarah Bowers, secretary for the company, testified that the above terms are the only ones that Dearman requested confirmation on. All other terms, most notably duration, remained solely the subject of oral agreement. In addition to the guaranteed salary and expenses, Dearman was eligible for commissions on sales.
One of the outcome determinative issues on this appeal is whether the parties orally agreed to a contract of employment for a definite term or indefinite term. Once again, the allegations differ sharply. According to Bowers, the employment agreement was for an indefinite term. In other words, Bowers viewed the relationship as terminable at the will of either party. Both William Bowers and Sarah Bowers testified that this was their understanding of the relationship.
Dearman, on the other hand, asserts that William Bowers extended an offer of employment for a definite term to run from September 15, 1986, through December, 1988. Dearman testified that during the September 3, 1986, meeting, William Bowers "guaranteed [Dearman] employment through '88"; that "[Bowers] stated to [Dearman] that he would guarantee ... employment through '88"; that the agreement reached on September 3 was for "secure employment through '88 at $24,000 per year guaranteed base income and expense account of $400 per month."
Leaving for now the question of duration, Dearman did not produce according to Bowers's satisfaction and this prompted Bowers to approach Dearman in early November, 1986. Bowers expected Dearman to generate the $40,000.00 to $50,000.00 in sales per month which he allegedly indicated he could produce. Dearman, of course, denies that he made this assurance, and testified that he told Bowers only that he could produce, but in no certain amount. William Bowers testified that he approached Dearman around November 1, 1986, to discuss his lack of production. According *1312 to interrogatory answers filed by Bowers, expenses incurred on behalf of Dearman from September 15, 1986 to November, 1986, exceeded the profit generated by Dearman during this same period.
At this early November meeting, Bowers proposed a sales quota for Dearman and a change in pay structure from a guaranteed base salary to a strict commission pay plan. According to William Bowers's testimony, Dearman accepted this change, but when Dearman continued to lack production, Bowers was forced to terminate him on November 18, 1986.
According to Dearman's complaint and testimony, William Bowers came to Meridian on November 18, 1986, and informed him for the first time that his compensation structure was being altered due to a lack of production. The changes being proposed by Bowers were not acceptable to Dearman, and he immediately sought legal advice. Dearman testified that the guaranteed salary originally offered by Bowers was the primary inducement for leaving the employ of McGinnis Distributing Company, and that he would never have left McGinnis for the new terms which Bowers proposed on November 18.
As a final note, it is not disputed that Dearman was paid according to the original terms through mid-November, 1986. On November 25, 1986, Dearman wrote a letter to Bowers Window and Door which read as follows:
Bill,
Please send me a letter stating that I am no longer employed with Bowers WDW & Door Co., so I can put in for my unemployment benefits.
They need confirmation from you, stating reasons. I told them you were closing this territory.
The unemployment will not cost you anything, as it will be drawn against the time worked at McGinnis Dist. Co.
Also, a copy of phone bills is enclosed and I am also turning in the pager.
Sarah Bowers responded on behalf of the company the next day as follows:
Dear Rick:
As per our agreement, you are not actually employed by Bowers Window & Door Co. You were to be a self-employed sales person representing our company.
Since you were employed on a contract basis, I do not feel I can give you a written statement that you are no longer employed with Bowers Window & Door Co.
Sincerely yours,
/s/ Sarah B. Bowers
Notwithstanding the above, Dearman began receiving unemployment benefits, and ultimately instituted this suit for specific performance, or alternatively, for damages in an amount representing lost wages, expenses and punitive damages.

DISCUSSION
The parties to this proceeding do not dispute that an agreement for employment was reached on September 3, 1986. Nor do they dispute that Dearman was to be paid $24,000.00 per year in guaranteed base salary, $400.00 per month expenses, plus commissions. Moreover, the three letters dated September 5, November 25, and November 26, 1986, provide the only written evidence of the agreement.

I.

DID THE CHANCELLOR ERR IN DETERMINING THAT THE CONTRACT WAS FOR A DEFINITE TERM?
In his opinion, the chancellor found from the evidence that "these parties did enter into a contractual arrangement whereby [Dearman] was to work from September 15, 1986 through December, 1988 for a period of twenty-seven months, $2,000 a month or twenty four thousand a year plus expense account." This finding was incorporated into the court's Judgment. As mentioned, Dearman testified that this was the duration of the contract, while Bowers presented testimony that the contract was for an indefinite period.
What we have here is a finding of fact made by a chancellor, and our familiar rule of deference prohibits us from disturbing *1313 this finding unless it is manifestly wrong/clearly erroneous. Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). It is the rule in this state that controverted testimony regarding the contemplated length of employment under an oral contract creates a question for the fact-finder as to the existence of a contract for a definite term vel non. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 64 (Miss. 1988); see also Producers Gin Association v. Beck, 215 Miss. 263, 269, 60 So.2d 642, 643 (1952); Harris v. Williams, 43 So.2d 364, 365 (Miss. 1949); Dyle v. Griffin, 122 Miss. 828, 835, 85 So. 93 (1920).
At trial, William Bowers and Sarah Bowers each testified that the contract of employment was for an indefinite term. Dearman, on the other hand, testified that Bowers guaranteed him employment through December, 1988. This is the only evidence offered as to duration. This situation is a perfect example of why the above stated principle of deference is followed by this Court. Only the trial judge is qualified to weigh the testimony of these three witnesses. We cannot say the chancellor erred in finding on controverted testimony that the contract was to extend through December, 1988.

II.

DID THE CHANCELLOR ERR IN APPLYING THE DOCTRINE OF EQUITABLE ESTOPPEL AS AN EXCEPTION TO THE STATUTE OF FRAUDS?
Preliminarily, the chancellor's finding that this contract of employment was to be carried out over a period of some twenty-seven (27) months brings the contract under the statute of frauds. To be enforceable under the statute, there must be sufficient written evidence to substantiate the contract. Miss.Code Ann § 15-3-1(d) (1972).
Bowers does not challenge the chancellor's finding that there were not sufficient writings to bring the employment contract into compliance with the statute of frauds, and for good reason. The chancellor found the writings offered at trial to be insufficient under the statute because there is no written confirmation of the length of employment. Clearly, the length of employment is a substantial term which must be included in a writing being offered to show a contract of employment for a definite term in order for the writing to satisfy the requirement of the statute. Cf. Short v. Columbus Rubber and Gasket Co., 535 So.2d at 64. Given, therefore, that the writings at issue contains no such reference, the chancellor was correct in concluding that the statute's requirement of a writing was not satisfied in this case.
It becomes necessary, therefore, to consider whether the chancellor erred in applying the doctrine of equitable estoppel to bar Bowers from asserting the statute as a complete defense. That the doctrine of equitable estoppel is a recognized exception to the statue of frauds is established by the case law of this State. Bowers argues that this doctrine has never been held to be an exception to the statute of frauds in employment contract cases; that our prior cases applying the doctrine as an exception have not dealt with subsection (d) of § 15-3-1. However, this argument is contrary to established case law.
In Shogyo Intern. v. First Nat. Bank of Clarksdale, 475 So.2d 425, 428 (Miss. 1985), this Court, while finding the statue of frauds inapplicable, held that even were it applicable, "the doctrine of equitable estoppel would take this case outside of the statute of frauds." The Shogyo opinion relied for this statement on PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss. 1984). There this Court held rather clearly that "[e]quitable estoppel ... is a well-established exception to our statute of frauds. Our cases have repeatedly held that, where the elements of equitable estoppel are present, the statute of frauds constitutes no bar to enforcement of that which a party has agreed." 449 So.2d at 206.
Admittedly neither Shogyo nor PMZ involved employment contracts governed by § 15-3-1(d), but in neither case did the Court remotely suggest that the doctrine of equitable estoppel could only be asserted as an exception in certain classes of cases *1314 where the statute of frauds is asserted. To the contrary, the Court quite clearly held that the doctrine may be pled as an exception in any case where the statute is asserted as a defense. See also Estate of McKellar v. Brown, 404 So.2d 550 (Miss. 1981); Sanders v. Dantzler, 375 So.2d 774, 776-77 (Miss. 1979); Martin v. Franklin, 245 So.2d 602 (Miss. 1971).
The only question we must answer is whether the facts of this case justify application of the doctrine in favor of Dearman. If not, then we must hold the contract unenforceable under the statute of frauds and render judgment here for Bowers. In order to uphold the chancellor's finding, it must appear from the record that (1) Dearman changed his position in reliance on the conduct of Bowers, and (2) that he suffered a detriment as a result. PMZ, 449 So.2d at 206. In reviewing the record and the chancellor's finding, we are again constrained to accord deference, particularly here because "we regard the question of whether [Dearman] relied to [his] detriment" as a finding of fact. PMZ, 449 So.2d at 205.
The chancellor obviously believed Dearman's version of the facts that Bowers desired to interview him in late August, 1986, as part of a plan to expand the Bowers operation into the Meridian area; that Dearman accepted an invitation to interview for a position in the Meridian area; that Dearman explained to Bowers that he had just recently married and built a new home in Meridian; that Dearman made it known to Bowers that he would only consider employment that was an advancement over his position at McGinnis; and that Dearman ultimately left the employ of McGinnis and accepted employment with Bowers in reliance on the terms offered by Bowers, those terms being essentially a guaranteed base salary of $24,000.00 per annum, $400.00 per month for expenses, commissions, and guaranteed employment through December, 1988.
The chancellor also found that Dearman suffered a detriment as a result of his induced change of position. The chancellor found that a person acting in good faith reliance on the offer of another and surrendering gainful employment should not be denied the fruits of a valid contract via the operation of an "archaic statute" when in fact the other party should be estopped.
As to the first part of the estoppel test, we find no error. Dearman testified that the salary structure offered by Bowers was a primary inducement to leave McGinnis. The offer of compensation which was reduced to writing was clearly more favorable than the compensation plan at McGinnis, and by itself, was a sufficient inducement for Dearman to leave McGinnis. Couple this with the chancellor's finding that Bowers also guaranteed employment to Dearman through December, 1988, and we can not conclude that the chancellor was manifestly wrong in finding that Dearman changed his position of employment in reliance on the offers made by Bowers.
However, did Dearman change his position in reliance on the conduct of Bowers to his detriment? The only detriment that Dearman may claim is the loss of existing employment in reliance on an offer of more favorable employment. On this point, we find a case which is remarkably similar, and apparently illustrative of the majority rule. In Cunnison v. Richardson, 107 A.D.2d 50, 485 N.Y.S.2d 272 (1985), the plaintiff had been continuously employed from 1979 in Toronto, Canada. After extensive negotiations, the defendant allegedly orally agreed to employ Cunnison in New York for a period of five years. The defendant apparently confirmed this agreement by letter dated, ironically, September 3, 1982, and in a subsequent interoffice memorandum dated January 7, 1983. 107 A.D.2d at 50-51, 485 N.Y.S.2d 272.
The confirmatory letter was remarkably similar to the one sent by Bowers. It stated that the defendant offered Cunnison the "Institutional Sales job we ... discussed" at a salary of $2,000 per month from September 27, 1982 to December 31, 1982, and depending upon performance, $30,000 annually thereafter, in addition to commissions. Id. at 51, 485 N.Y.S.2d 272. Cunnison was terminated in December, 1983, 14 and 1/2 months after commencing *1315 work for Richardson. She thereafter sued for wrongful discharge alleging the existence of a guaranteed five year contract. Id.
Richardson defended on the ground that the contract was unenforceable under the statute of frauds for lack of a writing substantiating the term, rendering the contract terminable at will. Cunnison conceded the absence of a writing confirming the length of the contract but argued that enforcement of the contract was mandated by principles of estoppel and part performance. Id. In support of this argument she alleged that in reliance upon the oral promise of Richardson she turned down other employment, gave up her Toronto job and residence, and at great personal sacrifice, moved to New York City. Id.
In its analysis, the court established first that the writings were not sufficient to satisfy the statute of frauds since the term or length of employment was not contained in either. Id. at 52, 485 N.Y.S.2d 272. As in this case, the plaintiff "did no more than to establish an annual rate of salary for plaintiff. It provided for no specific terms of employment, so that even if the letter were considered to be a contract of employment it would still be insufficient in law." Id., quoting Chase v. United Hosp., 60 A.D.2d 558, 558-59, 400 N.Y.S.2d 343 (1977). Thus, the statute of frauds would be an absolute bar to Cunnison's recovery unless some legal impediment to its assertion could be established. Cunnison, 107 A.D.2d at 52, 485 N.Y.S.2d 272.
Cunnison argued estoppel on the basis that it would be unconscionable to deny enforcement of the contract. She cited her move from Toronto to New York and her rejection of other jobs as circumstances "sufficiently egregious" to estop the defendant from invoking the statue of frauds as a defense. Id.
First recognizing that Richardson paid the costs of relocation for Cunnison, the court held that "in any event, it has been consistently held that a change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine." Id. at 53, 485 N.Y.S.2d 272. In Ginsberg v. Fairfield-Noble Corp., 81 A.D.2d 318, 321, 440 N.Y.S.2d 222 (1981), the court held that a "change of job, even with increased emoluments and advanced status `is not sufficient to call promissory estoppel into play.' The choice to forgo current employment because of rosy promises `does not put the stigma of unconscionability upon the defendant's right to assert the Statute of Frauds.'" (emphasis added); accord Swerdloff v. Mobil Oil Corp., 74 A.D.2d 258, 263, 427 N.Y.S.2d 266 (1980).
It appears to be the general majority rule that the termination of existing employment in reliance on an oral contract of employment, even for better pay, is only a necessary incident of being in the labor market and is not such an injury as to estop a defendant from asserting the statute of frauds as a defense. See e.g. Lovely v. Dierkes, 132 Mich. App. 485, 347 N.W.2d 752, 753-54 (1984) (termination of existing employment is itself insufficient proof of detriment such as to bar application of the statute of frauds); Rowe v. Noren Pattern & Foundry Co., 91 Mich. App. 254, 283 N.W.2d 713 (1979) (termination of existing employment may give rise to estoppel if coupled with a loss of valuable retirement benefits); Ruinello v. Murray, 36 Cal.2d 687, 227 P.2d 251 (1951) (must show that not only was existing employment given up, but that valuable rights under the existing contract were forfeited as well); see also Annot. Action by Employee in Reliance on Employment Contract Which Violates Statute of Frauds as Rendering Contract Enforceable, 54 A.L.R.3d 715, 725-56 (1973).
Dearman has not shown any detriment sufficient to invoke an estoppel. Certainly Dearman did not relinquish any valuable rights by leaving McGinnis since he admitted that he worked almost exclusively on commission, and apparently at will.
At oral argument Dearman argued that the November letter from Bowers stating that he was not an employee, but only an independent contractor, was deceitful, and this constituted evidence of detriment. First, Bowers stipulated at trial that Dearman *1316 was an employee. Second, it is impossible for this Court to hold that Dearman somehow changed his position in reliance on this letter since it was written after his firing. The November letter could in no way have served as an inducement for Dearman to change jobs, and a fortiori, there can be no detrimental reliance arising therefrom.
This Court can only conclude that the chancellor erred in finding that Dearman suffered sufficient detriment to invoke the doctrine of equitable estoppel. Therefore, the decision of the lower court must be reversed and judgment rendered here for Bowers.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.