IRVING, J.,
for the Court:
¶ 1. This appeal is from a modification action filed by Katie Headrick to increase alimony based upon Richard Headrick’s increase in net worth subsequent to their divorce. Richard filed an answer and counterclaim requesting the court to terminate the alimony because of Katie’s alleged cohabitation or “defacto marriage” with another man. Richard also sought the imposition of a constructive trust, attorney’s fees and an order declaring the provisions in the divorce decree making the alimony binding on his estate void as against public policy. The chancellor held that the alimony payments were lump sum in nature and could not be modified and denied all of the relief sought by Katie as well as by Richard.
¶ 2. Feeling aggrieved, Richard has filed this appeal and alleges that the trial court erred (1) in labeling the alimony “lump sum alimony” and in not terminating the estate provision, (2) in not terminating the alimony payments as a result of Katie’s misconduct, (3) in failing to impose a constructive trust in his favor during the period of Katie’s misconduct, and (4) in not awarding attorney’s fees and expenses to him. Finding no reversible error, we affirm.
FACTS
¶ 3. Richard Headrick and Katie Head-rick were divorced on February 21, 1984. The parties made a complete division of all real and personal property owned by them at the time of the divorce. The original decree specifically provides that:
It is further ordered, adjudged and decreed that both parties bind themselves, their heirs and assigns that they will not seek to change, amend, modify or otherwise change any provision herein except as provided above and in the event of any such attempt or changes made, then the party seeking to alter or change the provisions herein or any party changing the provisions herein shall indemnify the other party against all costs expenses or losses of whatever kind brought about by such change, alteration or attempt to change or alter the provisions herein (emphasis added).
The original decree also provides that if it would be in the parties’ best interest to enter into a mutual agreement to amend the provisions of the decree in the event of Richard’s insolvency or bankruptcy, then both parties could mutually seek to make reasonable changes.
¶4. Katie’s reason for requesting an increase in alimony was that Richard allegedly had a material change of circumstances as a result of the sale of his business which drastically increased his net worth and income. Richard is the sole stockholder of The Headrick Companies, Inc. The Headrick Companies owned all of the stock in Headrick Sign Company, Inc. and Headrick Outdoor, Inc. In 1997, Headrick Outdoor, Inc. sold all of its assets to The Lamar Corporation. Those assets consisted of outdoor adver *786 tising billboards, land leases and billboard leases. Richard’s net worth substantially increased after this event.
¶ 5. After he was served with a copy of the motion to modify, Richard employed a private investigator to obtain information on Katie’s financial condition and other information. He claims to have learned from the investigation that Katie lived with another man with whom she had a sexual relationship between 1989 and 1994. The man was identified only as Mr. Henderson.
¶ 6. Richard claims that Henderson lived with Katie free of charge, did not cut the grass, perform maintenance work, clean the house or perform any duty with regard to the house. Richard also claims that Katie gave Henderson Christmas and birthday gifts and that Henderson received his mail at all three of the residences Katie lived in during this time. Richard contends that Katie was living in a marital relationship with Henderson even though she never had a marriage ceremony.
¶ 7. At trial, Katie testified that she and Henderson lived together under the terms of a rental arrangement and that Henderson paid her rent. Katie admitted that she had sex with Henderson on at least three occasions during the early stages of the rental arrangement but stated that the sexual relationship ended and Henderson continued to live in her home as a renter. Katie testified that Richard was the only man she co-habited with after her divorce, having “gone back to him” twelve times. She stated that during these periods of reconciliation they conducted themselves as man and wife and took business and pleasure trips together, some in connection with the sign business. She testified that she finally ended the relationship in 1988 after contracting a sexually transmitted disease from Richard. Richard denied all of this.
Analysis of Issues Presented

1. The Characterization of the Payments to Katie

¶ 8. The first three assignments of error are combined for discussion as their resolution hinges upon the nature of the alimony. Richard argues that the alimony contemplated was periodic alimony. He contends that a finding that the payments are periodic alimony would be consistent with the parties’ intentions, the wording of the decree and the parties’ treatment of the payments made by Richard. Richard further argues that the following characteristics of the alimony payments in this case present further proof that the payments were periodic rather than lump sum alimony:
a. The alimony was not a fixed sum or fixed liability of Richard.
b. The award in this case was not time limited alimony.
c. For a ten-year period, the alimony in this case was adjusted for inflation.
d. The alimony payments terminate upon the remarriage of Katie.
e. The alimony payments terminate upon the death of Katie.
f. The alimony payments have been included as income to Katie for tax purposes.
g. The alimony obligations paid by Richard have been treated as a deduction from total income on his tax returns.
h. Katie’s own filing of a motion to increase alimony evidenced her belief that it is not lump sum but periodic alimony. Katie also included on two Rule 8.05 Financial Statements that this alimony was taxable to her.
i. The decree itself provides for a change in the amount of alimony in *787 the event there was a decline in the financial condition of Richard,
j. The alimony payments stipulated in the decree were not a substitute for a division of property.
¶ 9. The chancellor found as follows:
Katie and Richard entered into a contract at the time of their 1984 divorce. Their contract was very specific and was approved by the Court. As a part of their contract to end their marriage they agreed before the Chancellor at that time that the provisions for alimony “shall not be altered or changed on the basis of changed circumstances or conditions.”
The Court finds that Katie and Richard contracted with each other in 1984 to fix Katie’s alimony payments from Richard and that this Court cannot change their contract.
Katie is not entitled to an increase in alimony because of Richard’s increase in net worth. Nor is Richard entitled to terminate his alimony payments to Katie because she admitted to having sex with someone other than Richard.
The Court views Richard’s obligation to Katie to be lump sump alimony rather than periodic alimony since Richard’s estate is bound for the payments to Katie if Richard predeceased her.
[[Image here]]
This Court believes that this case is similar to McDonald [688 So.2d 929 (Miss.1996) ] and East [493 So.2d 927 (Miss.1986) ]. The Court in East found that all of the specific requirements of lump sum alimony need not be met in every case.
In this case, all of the alimony payments shall terminate at the death of Katie or her remarriage. It does provide that payments shall be binding upon the estate of Richard. In addition, the parties set out a separate paragraph that their agreement is irrevocable and shall not be altered or changed based upon a claim of changed circumstances or conditions.
It was the obvious intent of the parties in this case to create a non-modifiable agreement and the chancery court to approve and confirm it as part of a solemn court decree. The parties and the chancery judge intended to create a non-modifiable contract and court judgment.
As our Court stated in Id. at 930[sic], if this Court were to hold that this agreement between Richard and Katie which was solemnized by a court decree could be modified by a subsequent change in circumstances of the parties, then this Court must also say that it is impossible to draft an agreement to pay the wife a sum certain until she dies which cannot be changed, up or down.
Based upon the evidence presented in this case, this Court finds that the agreement between Richard and Katie, while using the term alimony, was in fact a property settlement or lump sum alimony, payable and fixed in unalterable installments. When the parties specifically provided in their agreement that the payments would not terminate upon Richard’s death and that neither party could seek to modify or alter these payments, this removed any claim that it was no more than periodic alimony. Richard and Katie are bound by the terms and provisions of their agreement.
¶ 10. This Court employs a limit-' ed standard of review when reviewing decisions of a chancellor. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997) (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). The standard is abuse of discretion. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., *788 716 So.2d 200, 204 (Miss.1998). However, for questions of law, the standard of review is de novo. Consolidated Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 (Miss.1999) (citing Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990); Cole v. National Life Ins. Co., 549 So.2d 1301, 1303 (Miss.1989)). The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992) (citing Smith v. Dorsey, 599 So.2d 529 (Miss.1992); Bowers Window & Door Co. v. Dearman, 549 So.2d 1309 (Miss.1989)).
¶ 11. The law and the reasoning that formed the basis of the chancellor’s ruling that the agreement between Richard and Katie provided for lump sum, rather than periodic alimony, were clearly set forth in his written opinion. His findings were neither manifestly wrong, or clearly erroneous, nor did he apply the wrong legal standard; therefore, under this Court’s limited review, we affirm.

2. Entitlement to Attorney’s Fees and Expenses

¶ 12. Richard contends that the agreement contained a clear provision that in the event either party attempted to modify the agreement in an attempt to increase the alimony payments, the party filing the motion should have to pay all fees and expenses incurred by the other party in having to defend the action; therefore, the chancellor should have awarded him fees and expenses incurred in this case. The chancellor held that, in spite of this provision of the agreement, each party should bear his own costs and expenses since both Richard and Katie sought to modify the agreement.
¶ 13. As stated, Mississippi law vests the chancery court with considerable discretion and a chancellor’s findings on an issue will not be disturbed unless manifestly wrong. Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss.1988). Here, the chancellor found that both parties sought to modify the agreement, and by the terms of the agreement, that fact vitiated their right to an entitlement of attorney’s fees. This finding is amply supported by the record. Accordingly, we find no abuse of discretion and affirm the chancellor in all particulars.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY DENYING THE MOTION TO MODIFY ALIMONY PAYMENTS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ„ CONCUR.