THOMAS, J., for the court.
¶ 1. Carl and Martha Almond were granted a divorce on irreconcilable differences. The chancellor denied Carl’s request for alimony and a credit for a portion of Martha’s retirement benefits. Carl appeals the chancellor’s decision asserting the following issues as error:
I. THE TRIAL COURT ERRED IN NOT CONSIDERING AND AWARDING CARL ALIMONY DUE TO HIS DISABILITIES.
II. THE TRIAL COURT ERRED IN NOT GRANTING CARL A CREDIT FOR A PORTION OF MARTHA’S RETIREMENT BENEFITS.
Finding no error, we affirm.
FACTS
¶ 2. Carl and Martha Almond were married on April 15, 1966. In July 1966, they *105 moved to Vicksburg, Mississippi, where Carl began work at the Marathon-LeTour-neau plant. Carl and Martha had two children within the first few years of their marriage, and Martha stayed at home with them and performed duties typical of a housewife. She also kept other children in the neighborhood for extra income. In 1977, Martha went to work as a bank teller. A year later, she took an office job at LeTourneau where she worked until 1986. At that time, Martha obtained a job at the Waterways Experiment Station as a secretary and has worked there since. In 1982, Carl and Martha built a house in Warren County using money they had saved together for a down payment. At the time of trial, the house mortgage was fully paid.
¶ 3. In 1991, Carl injured his right knee at work. He underwent arthroscopic surgery on his knee in 1992. Due to this injury, Carl was paid thirty-four thousand dollars in settlement proceeds. In 1992, Carl was notified that LeTourneau was going to shut down the plant in Vicksburg, and that managers and supervisors had the option of receiving severance pay; Carl took the option. In 1995, the plant reopened and former employees were given the option to reapply. Carl did not reapply, however. In 1999, Carl took early voluntary retirement at the age of fifty-five and began receiving a check for $170.24 monthly.
¶ 4. On April 7, 2000, Martha moved out of the marital home and into an apartment due to Carl’s refusal to work and the financial burden that it created. Martha filed a petition for a partition of the marital home and the personalty on April 13, 2000. On May 18, 2000, Martha and Carl filed a joint petition for divorce based on irreconcilable differences. They could not agree, however, to the equitable distribution of marital property and therefore left this distribution to the chancellor.
¶ 5. At trial, Carl took the position that he was disabled and could not work due to a back injury which occurred in 1973, his knee injury, his feet, asbestos of the lungs, hearing loss, and hypertension. Due to these factors, Carl asked that he be allowed to live in the marital home and receive alimony from Martha along with a portion of Martha’s retirement. Carl and Martha both testified at trial, as did their two emancipated children and Carl’s sister. At the conclusion of the trial, the chancellor granted their divorce on irreconcilable differences and denied Carl’s request for alimony and a portion of Martha’s retirement. Both Carl and Martha were given a half interest in the marital home which was to be sold. Carl was given both pickup trucks and a bass boat, and Martha was given a Mazda car. A tract of land in Kosciusko was declared a non-marital asset of Martha’s. Both Carl and Martha were given their own checking, savings, and retirement accounts. Other assorted personal property was also divided.
ANALYSIS
I. DID THE TRIAL COURT ERR IN NOT CONSIDERING AND AWARDING CARL ALIMONY DUE TO HIS DISABILITIES?
¶ 6. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 *106 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284(¶ 11) (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)).
¶ 7. Carl argues on appeal that the trial court erred in not considering and awarding him alimony due to his disabilities which include a back injury which occurred in 1973, knee injury, problems with his feet, asbestos of the lungs, hearing loss, and hypertension. Carl claims that since he is unable to work and has a monthly income of $170.24, Martha should be ordered to pay him alimony out of her gross monthly income of $2,657. At the time of the hearing, Carl was receiving periodic checks from asbestos claims, but at present has no other reliable income except for his savings accounts which totaled approximately $24,000.
¶ 8. Awards of alimony in a divorce action are within the discretion of the chancellor. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Unless the chancellor is in manifest error and abused his discretion, we will not reverse. Id. “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion.” Id. “The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of the witnesses and the weight of their testimony.” Rawson v. Buta, 609 So.2d 426, 431 (Miss.1992).
¶ 9. As Carl correctly points out, the determining twelve factors to be considered for an award of alimony are set forth in Armstrong. We presume on appeal that the chancellor has taken all factors into consideration. Voda v. Voda, 731 So.2d 1152, 1155(¶ 11) (Miss.1999). Looking to the record and the individual factors, there is ample evidence to support the chancellor’s findings. The chief question here is whether or not Carl is able to work. This, in turn, is related to Carl’s disabilities.
¶ 10. At trial, evidence was presented to show what Carl was able to do. Carl enjoys fishing and hunting, including launching his boat by himself and killing deer and dragging them out of the woods. He also enjoys dancing, which he did at a local “night spot” and at his sister’s wedding in 1999. Carl mows the lawn and works on the family vehicles. He joined a gym and works out on the treadmill. Martha and Carl’s children both testified that Carl did not seem to have any disability.
1111. Carl presented no medical evidence of his disabilities. He applied for Social Security Disability Benefits and was denied benefits. Although he claims he received a back injury in 1973, he never saw a doctor for the injury and Martha testified that he never complained of it. With regard to hearing loss, Carl does not wear a hearing aid and the chancellor had ample opportunity at trial to determine his ability to communicate during the trial. After his knee surgery in 1992, Carl was given permission to return to work but chose not to do so. A recent physical showed Carl to be in good health. A 1999 videotape was shown at trial in which Carl appeared to move around without difficulty. He was diagnosed with asbestosis, but testimony was presented that others similarly diagnosed had returned to work at LeTourneau. Carl produced no evidence that he was unable to work, and the chancellor found that the position that he is disabled was not supported by the evidence presented. The chancellor did not abuse her discretion in this regard. We hold this issue to be without merit.
*107 II. DID THE TRIAL COURT ERR IN NOT GRANTING CARL A CREDIT FOR A PORTION OF MARTHA’S RETIREMENT BENEFITS?
¶ 12. Carl argues that Martha enjoyed the benefits of his retirement during the eight years prior to their separation and that he will not enjoy any of Martha’s retirement benefits under the chancellor’s ruling. Carl cites no authority for this brief assertion. We are therefore precluded on appeal from addressing this issue. Bland v. Bland, 629 So.2d 582, 591 (Miss.1993). Even when we examine this issue, however, we find no grounds for reversal.
¶ 13. In the chancellor’s judgment, Carl and Martha both received a one-half interest in the equity of their marital home which was worth $47,387.50 each. Carl was awarded possession of a 1979 Ford pickup truck and a 1986 Chevrolet pickup worth $1,800, along with a bass boat and motor. Martha was awarded a 1991 Mazda car worth $1,700. A sixty-four acre tract of land in Kosciusko, Mississippi, was found to be a non-marital asset that belonged to Martha. Carl was awarded his checking accounts, savings accounts, and certificates of deposit which totaled $24,796.75, and Martha was awarded her checking accounts, savings accounts, and certificates of deposit totaling $6,063.15. Both were awarded their own investment and retirement accounts. Other personal property was also divided between them. The chancellor found that Martha was credited with a marital asset worth of $103,476.20 and that Carl was credited with an asset worth of $86,043.68. The chancellor found that since Carl refused to contribute to his own retirement for the period after 1992 when he refused to work, he was not entitled at this point to a portion of Martha’s retirement.
¶ 14. Carl argues that Martha enjoyed the benefits of his retirement for eight years prior to their separation. However, Carl did not begin to draw retirement until 1999. Eight years is therefore incorrect, and it is instead at best less than one year. Also, if Martha chose to draw her retirement early as Carl has done, her monthly check would be less than his. During the entire period after 1992, Martha worked and was the undisputed breadwinner for the family. The chancellor found that Carl refused to work during this period and took this into consideration. In an equitable division of the marital property, the chancellor is not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1232 (Miss.1997). In Love, Dr. and Mrs. Love had accumulated $114,000 in retirement accounts and approximately $21,000 in savings. Mrs. Love had a separate retirement account which had accumulated $21,000. Love, 687 So.2d at 1231. The chancellor in Love awarded Mrs. Love one-half of the mutual funds but awarded Dr. Love the entirety of his retirement account. Id. The supreme court held that the chancellor was not manifestly wrong in not dividing the retirement account equally between the Loves. As in the case here, both parties had their own retirement accounts, and it is within the chancellor’s discretion to determine the equitable distribution of the retirement accounts. This issue is without merit.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.