GRIFFIS, J., for the Court.
 

 ¶ 1. The Pearl River County Chancery Court granted Cynthia Amacker (“Cindy”) a divorce from Patrick Amacker (“Patrick”) and divided their marital assets. Cindy appeals the chancellor’s findings and argues that: (1) the chancellor erred when he failed to award her an interest in the camp house that Patrick purchased after their separation; (2) the chancellor ig
 
 *494
 
 nored her contributions toward the marital home; and (3) she should have been awarded alimony and an interest in Patrick’s retirement benefits.
 

 FACTS
 

 ¶ 2. Cindy and Patrick were married on February 14, 1994. This was their second marriage to each other.
 

 ¶ 3. Cindy filed for divorce on August 11, 2005, based on the ground of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. A partial hearing was held on June 6, 2006, at which by stipulation, the parties agreed to a divorce based on irreconcilable differences and asked the chancellor: to distribute personal and real property, to calculate Cindy’s interest in Patrick’s retirement, and to determine whether attorney’s fees or alimony were appropriate. The court was unable to conclude the hearing at that time, and the case was continued.
 

 ¶ 4. However, on April 25, 2007 — before the hearing was concluded — the chancellor entered a judgment granting Cindy a divorce on the ground of habitual cruel and inhuman treatment. All other issues other than the grant of divorce were reserved for a final hearing. On January 22, 2008, the chancellor determined that: (1) Patrick’s interest in the marital home was $60,000; (2) Patrick purchased the camp house after the separation and awarded it solely to him; (3) alimony for Cindy was not appropriate; (4) Patrick was not entitled to any of Cindy’s workers’ compensation benefits; and (5) Cindy was not entitled to any of Patrick’s disability benefits or payments for injuries that occurred before their marriage.
 

 ¶ 5. Cindy proceeded pro se with her appeal, which was subsequently dismissed by the supreme court for failure to follow the Mississippi Rules of Appellate Procedure. Cindy failed to timely file a brief. After the dismissal, Cindy petitioned: to have her appeal reinstated, for time to retain counsel, and for time to file a supplemental brief. The supreme court granted Cindy’s request, and Cindy retained counsel who filed a supplemental brief. We address only the issues included by counsel in the timely filed supplemental brief.
 

 STANDARD OF REVIEW
 

 ¶ 6. The standard of review employed by this Court in domestic relations cases is well settled. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor’s findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.
 
 Andrews v. Williams,
 
 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing
 
 Sandlin v. Sandlin,
 
 699 So.2d 1198, 1203 (Miss.1997)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard.
 
 Glass v. Glass,
 
 726 So.2d 1281, 1284(¶ 11) (Miss.Ct.App.1998) (citing
 
 Bowers Window and Door Co., Inc. v. Dearman,
 
 549 So.2d 1309, 1312-13 (Miss.1989)).
 

 ANALYSIS
 

 1. Did the trial court err when it failed to award Cindy an interest in the camp house that Patrick purchased after the separation?
 

 ¶ 7. Cindy claims that she deserves credit for negotiations and time and money expended for the improvement and renovation of the camp house. According to Cindy, these efforts contributed to Patrick’s ability to purchase the camp house. Patrick claims that Cindy did not contribute to the purchase of the camp house.
 

 
 *495
 
 ¶ 8. On appeal, Cindy argues the chancellor did not analyze her interest in the camp house under the
 
 Ferguson
 
 factors.
 
 Ferguson v. Ferguson,
 
 689 So.2d 921, 928 (Miss.1994). The
 
 Fergusm
 
 factors “aid chancellors in their adjudication of marital property division.”
 
 Id.
 

 ¶ 9. In his opinion, the chancellor listed each of the
 
 Ferguson
 
 factors and stated that he had taken them into consideration. The
 
 Ferguson
 
 factors are as follows:
 

 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
 

 a. Direct or indirect economic contribution to the acquisition of the property;
 

 b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
 

 c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
 

 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
 

 8. The market value and the emotional value of the assets subject to distribution.
 

 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
 

 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
 

 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
 

 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
 

 8. Any other factor which in equity should be considered.
 

 Id.
 

 ¶ 10. We begin by addressing whether the camp house can be considered marital property since it was purchased after the separation. In her recent book, Professor Deborah H. Bell explained that “in the absence of a support order, marital property accumulation continues until divorce.” Deborah H. Bell,
 
 Miss. Family Law
 
 § 6.02[3][b] (2005). “Until the formality of the court order on temporary support or separate maintenance, the effect of each spouse’s earnings remains the same as if the couple were still physically and even happily residing in the marital home[.]”
 
 Pittman v. Pittman,
 
 791 So.2d 857, 866(¶ 29) (Miss.Ct.App.2001).
 

 ¶ 11. Patrick purchased the camp house after he and Cindy separated, but no temporary support or separate maintenance order had been entered that would cut off the accumulation of marital property. Therefore, the camp house can be considered marital property. “However, the earning spouse may argue that the other contributed little to [the] assets acquired during separation and should be awarded a smaller share.” Bell,
 
 Miss. Family Law
 
 § 6.02[3][b],
 

 ¶ 12. Cindy testified that she had negotiated with the owner of the camp house, Dr. Norman McSwain, to purchase the
 
 *496
 
 camp house at a reduced price discounted for the work that she put into it to make it livable. Her position was that the purchase price of the camp house was “fifty something thousand dollars,” and she made a down payment of $15,000 through labor and improvements to the property. She claims that Patrick was able to purchase the camp house for $43,000 because he benefitted from this down payment. Cindy claimed that Patrick wanted nothing to do with buying the camp house until after they had separated.
 

 ¶ 13. To support her claim that she had an interest in the camp house, Cindy testified that she expended time and $100,000 of her money to renovate the camp house and the marital home. With respect to the camp house, she claimed that she cashed in a $10,000 certificate of deposit (“CD”) for “stuff’ for the camp house. She produced a summary of canceled checks that had been marked “home improvement.” Cindy claimed that during the month that she had lived at the camp house, she did labor intensive work to improve the property, i.e., scrubbing, cleaning, papering the cabinets, and replacing the kitchen stove and air conditioner.
 

 ¶ 14. In support of his claim that Cindy should not be awarded an interest in the camp house, Patrick denies that Cindy contributed labor or money to the cabin’s improvements. It was unclear which of the checks that Cindy submitted were for improvements made to the camp house and. which were for the improvements made to the marital home — if they were for improvements at all. Many of the checks were written to cash, Walmart, and Home Depot. Although home improvement had been written on the memo line of some of the checks, at least some of the notations were made after the checks had been cashed. Furthermore, the chancellor also noted that there was no proof that Cindy used the proceeds from her $10,000 CD toward making improvements to the camp house.
 

 ¶ 15. Cindy was unable to produce written documentation of any agreement between her and Dr. McSwain for the purchase of the camp house. This Court cannot, on the facts presented at trial, understand how the alleged improvements to the camp house constituted a down payment. We fail to see the benefit to Dr. McSwain.
 

 ¶ 16. The chancellor did not make a specific finding about Cindy’s contribution toward the camp house when he analyzed the
 
 Ferguson
 
 factors, but he did make a finding on this issue immediately before the analysis of the
 
 Ferguson
 
 factors. The chancellor noted the conflicting testimony about Cindy’s contribution and found that her contribution toward the camp house was small when compared to Patrick’s contribution. Accordingly, we cannot find that the chancellor neglected to consider Cindy’s contribution when he awarded the camp house to Patrick. On the contrary, he considered Cindy’s contribution but did not find it substantial when compared to Patrick’s contribution. This issue has no merit.
 

 2. Did the chancellor ignore Cindy’s contributions toward the marital home?
 

 ¶ 17. Within her argument concerning her interest in the camp house, Cindy makes several claims that she was not given credit for renovations she made to the marital home. When Patrick and Cindy married, Patrick owned a home (the marital home), which he and Cindy shared until they moved to the camp house one month or two months before their separation on August 9, 2005. The marital home was deeded jointly to Patrick and Cindy after their marriage and was marital prop
 
 *497
 
 erty. Accordingly, the renovations and improvements to the marital home became marital property.
 

 ¶ 18. Patrick disputed Cindy’s claim that she put $90,000 into renovating the marital home and estimated that the renovations totaled $30,000. The chancellor faced the same credibility issue with the checks and receipts for renovations to the marital home as the camp house. The testimony showed that Cindy and Patrick had both contributed to the marital home financially and through their labor.
 

 ¶ 19. The chancellor equitably divided the home, valued at $130,000, by awarding Cindy the home and requiring her to pay Patrick $60,000 for his interest in the home. Ultimately, Cindy’s interest in the home was $70,000. Both parties had contributed to the home, and any improvements to the home were marital property. The chancellor did not abuse his discretion when he determined the parties’ interest in this property. This issue lacks merit.
 

 3. Should Cindy have been awarded alimony or an interest in Patrick’s retirement benefits?
 

 ¶ 20. Cindy argues that the chancellor misapplied three of the ten
 
 Armstrong
 
 factors when he considered whether alimony was appropriate. Cindy further argues that she is entitled to a portion of Patrick’s retirement, but there was no evidence of Patrick’s retirement before the chancellor.
 

 ¶ 21. “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.”
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993). (citations omitted).
 

 ¶ 22. The chancellor listed the
 
 Armstrong
 
 factors and found that: (1) Patrick’s monthly income was $2,400, and Cindy’s monthly income was $1,600; (2) Patrick was permanently disabled, and Cindy was disabled, although the chancellor did not now how long Cindy’s disability would last; (3) they both had needs; (4) it was a midterm marriage, bordering on a long-term marriage; and (5) they had agreed to an irreconcilable differences divorce.
 

 ¶ 23. Cindy claims that the parties’ health and earning capacity, length of the marriage, and fault all weighed in her favor.
 
 See id.
 

 A. Health and Earning Capacity
 

 ¶ 24. Cindy argues that the chancellor erred when he analyzed the parties’ health and earning capacity, because he speculated that she might go back to work. Cindy is a registered nurse, but she is currently temporarily totally disabled and collecting workers’ compensation benefits. Cindy testified that she did not know when she would be able to return to work. Patrick receives disability and an annuity payment from the settlement of an offshore injury that occurred prior to the marriage.
 

 ¶ 25. Patrick’s income is $800 per month more than Cindy’s; however, the chancellor found that if and when Cindy returns to work as a registered nurse, her income could be substantially more than Patrick’s. Cindy argues that it is mere speculation that she will go back to work as a nurse. Cindy testified that her doctor has labeled her
 
 temporarily
 
 totally disabled. The very nature of a temporary disability means it is not expected to be permanent. We find that the chancellor did not abuse his discretion when he considered that Cindy’s disability was temporary and that she would have substantially more income when her disability ended.
 

 
 *498
 

 B. Length of the Marriage
 

 ¶ 26. The parties were married for eleven years. The chancellor stated this was a mid-term marriage that bordered on being a long-term marriage. While this factor weighs slightly in favor of Cindy, we find that the chancellor’s decision to deny alimony after eleven years of marriage does not amount to an abuse of his discretion.
 

 C. Fault
 

 ¶27. Cindy filed for a divorce based upon habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. The parties had agreed to an irreconcilable differences divorce, but the chancellor entered a judgment granting Cindy a divorce on grounds of habitual cruel and inhuman treatment. When the chancellor made findings about the
 
 Armstrong
 
 factors, he stated that there was no evidence of fault and that the parties had agreed to an irreconcilable differences divorce. Cindy claims that the chancellor’s findings were incorrect and were egregiously erroneous.
 

 f 28. Cindy failed to raise any issue about the grounds for granting the divorce with the chancellor when he made his findings. “Failure to make a contemporaneous objection constitutes [a] waiver of the objection and cannot be raised for the first time on appeal because the trial court is denied the opportunity to consider the issue and possibly remedy the situation.”
 
 Copeland v. Copeland,
 
 904 So.2d 1066, 1073 (Miss.2004).
 

 ¶ 29. Even if Cindy had not waived this issue, we find that the chancellor’s finding was correct. We acknowledge that the chancellor granted Cindy a divorce based on habitual cruel and inhuman treatment — as alleged in her complaint — during the time period between the first and second hearing. However, he did so without any evidence of fault. Cindy never put forth any evidence of Patrick’s habitual cruel and inhuman treatment, and neither party challenges the order granting the divorce on appeal. Accordingly, we do not address it. The chancellor’s finding on this factor was correct.
 

 ¶ 30. This Court is not called upon or permitted to substitute its collective judgment for that of the chancellor.
 
 Richardson v. Riley,
 
 355 So.2d 667, 668-69 (Miss.1978). A conclusion that we might have decided the case differently, standing alone, is not a basis to disturb the result.
 
 Id.
 
 Accordingly, we affirm the chancellor’s decision to deny alimony.
 

 ¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.